Okay, we have a motion set for argument first. This is in Moore v. Navillus Tile. Could we proceed, please? Oh, very good. Okay, so just Mr. Armstrong? Yes, Your Honor. All right. May it please the Court, Lee Armstrong, Jones Day for Movement and Appellant Navillus Court. The lower court read this Court's decision in Nassau v. Strip Search as forbidding it or any other district court, for that matter, from applying what are known as the traditional state factors, the so-called Hilton factors. That's not what this Court said in Nassau v. Strip Search. It's not what the Seventh Circuit said in Dillon, which is from where those factors came that this Court adopted. You didn't even really address the factors in the Nassau Strip Search County factors in your materials, and I think it would be useful for you to do so. We didn't address them, Your Honor, because they just simply don't apply here. In fact, they're at direct odds with the traditional state factors. The reason that test developed is you're dealing usually, although not always, with sovereigns. I call it a wasteful bond. It's clear that the judgment creditor is going to get paid. Dillon, where this all started, involved a judgment of $110,000 against the City of Chicago. And so what the Court said is under 62D, dealing just with a money judgment, it's wasteful. And those factors all line up to make sure that there's enough comfort there for the judgment creditor. But part of what the Court was looking at, though, was what comfort that the judgment debtor has, that it will eventually get paid, and that in the interim, the absence of a bond won't decrease its security. And that's what the factors seem directed towards, whereas the traditional state factors go to something else entirely. So why are they irrelevant? We agree that they focus on two different things. But what I'm saying is, certainly, under, regardless of what the lower court's limitation on its power, we don't agree with that, and I think it's going to wind up having many more applications like this coming to this court in the first instance, certainly under the All Writs Act, under Rule 62G, as the lower court acknowledged itself, this court has the power to apply the right standard. And it would make no sense to apply the Dillon factors, or now the Nassau County factors, to this case. And under the— Excuse me. If we have the authority to consider those factors here, then what difference does it make that the district court did not? Why don't we just consider all the factors that are relevant, that you think are relevant, and address the issue on the merits? I think that that's a smart way to proceed, Your Honor. You're not suggesting that all we need to decide is which standard applies, and if we the district court applied the wrong standard, we should remand and have the district court do it all over again, are you? No, Your Honor, we are not. This is a rule, a motion under Rule 8, and it comes to you, and it can stand on its own. I was just noting our disagreement with what the district court found. On the factors, the first, on the merits, even though the district court did not apply the factors that we believe it should have, it spoke to them, and spoke to them in our favor on every one of them. On the merits, you will hear from plaintiffs how this is— When you say it spoke to them, if it didn't actually apply them and make actual findings, it seemed to me that what you were relying on are relatively stray remarks in the course of having a hearing, where judges often try out ideas, think out loud, do something other than make actual findings, right? Fair enough. So let's put that to the side. Okay. Now you're down to a minute and 40 seconds to put everything aside. Let's get to the what the answers are. The Hilton factors should be applied here. On the merits, this is not a thorny factual issue. We accept for purposes of this application all the findings that the lower court made. This is a pure legal issue for the court. It's this. Can there be a finding of alter ego liability when the fact finder itself has found that not only has there been no intent to evade obligations, there's no evasion of obligations? That was the finding in the lower court. There's not been a case like this. So said the lower court. In fact, Judge McMahon found there was no case that bore any resemblance to the facts of this case and urged us to try to find one. Nobody came forward with a case that satisfied her on those grounds. But at the end of the day, what you will see is this is not a case where Navalis took contracts and pushed it to its non-union arm to avoid paying obligations. This is a case where the developer testified that he rejected Navalis' bid and then awarded the contracts to the non-union company. What this judgment has done is it has converted an opportunity that was never there for the unions, although its union contractor Navalis tried its darndest, into a guaranteed annuity. And for that reason, on the merits, putting aside any factual issues, accepting that it's true, we prevail. The other factors are not seriously contested. We are on the brink of bankruptcy. We have almost 2,000 people whose jobs are at issue here. On the other hand, you have the plaintiffs, who it's a lot of money, but it's still just money. What's the issue here? The merits or the bond? I think that the merits clearly show, I think they're all interrelated, Your Honor. And it shows that you have a flawed, seriously flawed judgment. You believe you should win, therefore you should have a bond. Otherwise, you can't prevail. No, what I'm saying is we cannot, it has been established, we cannot bond. We will win. And because of that, because we meet our burden, there should be no bond. We can't, the district So if you can't get a bond? We cannot. The district court accepted that. We tried and could not. You file for bankruptcy protection. That's right. You lose the judgment, you file for bankruptcy protection. If we don't stay the judgment, we file for bankruptcy protection. You lose the judgment, you file for bankruptcy protection. And if you can't get a bond, you file for bankruptcy protection. That's where we Presumably the bank of the state can litigate the case and vindicate your position. I think that would make, take a bad situation You've been hiring your firm. I think that was, I think that would take a bad situation and make it much worse. Does the record establish that you cannot operate in bankruptcy, that you wouldn't reorganize and come out? I don't think the record establishes that. However, just sitting where we are now, you have two considerations. One is we would be going into bankruptcy and all that that means, including the stain of bankruptcy in this business, in this industry. It would mean that other creditors would get a seat at the table. It would mean additional expense in the bankruptcy proceedings versus no showing of substantial injury to the plaintiff. Have you offered any security at all? I mean, my view is you have just said we can't get a bond and therefore we offer nothing. Have you tried to work something out or offer some comfort to the judgment creditor? Your Honor, we would love to engage and we have offered. We've offered to keep our shareholder's equity at $38 million. We've offered increased audits. We want complete transparency. Nobody's running away in the middle of the night with these assets. The plaintiffs will not engage with us on that. And we're open to additional suggestions. This is not a case where we just said we made a half-hearted attempt to get a bond, couldn't get it, and then said, well... Can you get a bond at a lesser amount? It's difficult because the bonding, this industry and this company, its lifeblood is bonding, right? Bid bonds, performance bonds, payment bonds. It is at its capacity. And so when it applied for the bond in the amount of $76 million, the response at least from one, from Liberty, was you are at your capacity and thus we cannot bond you. You'd have to pay a premium of about $7 million, probably. Which imposes another issue. But we don't have a... We can't. And we don't have a bonding company that is willing to even offer us terms. So what's our position? Just because someone says we lost at the district court, but we should have won and we can't put a bond up. So the judgment creditor who won can't get collection, can't get money. And then at the end of the day, if it turns out that the judgment is affirmed, won't get paid. That's always the competing interest. And it's our job to convince you that this is one of those cases. They won at the district court level. Now they're going to lose because they can't get execution. What I would... The way I would phrase it is they're going to... There's no reason to think they'll be in any better shape. The district court itself said that executing on the judgment now and not staying is... This is the court's word, self-destructive. That it is in the plaintiff's interest that Navalis continues to operate. Even as we sit here right now, we continue to send $3 million... It's some kind of a deal with you where they get less than their judgment and get something. But we can't do anything on the expectation there will be a compromise. But you can't... You do have the power, Your Honor. If you accept the premise, just for purposes of this argument... The argument is... Let me see. The argument is that, look, plaintiff can't recover. If they execute, we're going to bankruptcy. They can't recover. They can't recover now. They can't recover later. So we should issue a stay to recognize that the plaintiffs can't recover. That's not my argument, Your Honor. It comes to... My argument is in a case like this where you have a flawed judgment... Let's assume... Just a quick hypothetical. Why is it a flawed judgment? Because you say so? No, because you have to say so. I have to convince you. Because there's been no... There's been a finding that there's been no intent to evade obligations. There's been a finding that there's been no actual evasion. What if there were a judgment against the state of New York at $200 billion? You couldn't get a job with union labor, so you did a job with non-union labor. I'm sorry, Your Honor? You couldn't get a job with your left hand on union labor, so you took your right hand on non-union labor and you got the contract. But that's not this case. That's not this record. The case here, with all due respect, is the developer testified after Navalis applied for the project that it was his decision, and the court credited his testimony, to proceed non-union. As a result of that, a job that the unions would never have enjoyed has now been granted to them. There is no case... And this court in Cabossum in 2010 said the purpose of the doctrine is to prevent the evasion of obligations. There is no evasion of obligations. Isn't there an evasion of the amount of money that would have gotten into the health and welfare funds if it had been a union job? They would never have gotten the... So says the developer. They would never have gotten these projects. And as I said before, Your Honor, just as an example, if there's a $200 billion judgment against the state of New York, and you look it on its face and it's some creative RICO theory, and you say, well, this just isn't right. I know this is a wrong judgment. And the budget for New York state is less than that. Are you saying that the court doesn't have the power to step in there? So the standard you're suggesting that we apply is if this judgment is ridiculous on its face, then you should be exempt from having a bond? No, because the... Then tell me what the standard is. Just that we think it's wrong based on a sketchy briefing on a motion? No. Or what? How convince... You said you have to convince us. What do you have to convince us of? The standard that should be applied here, because the irreparable injury, the balancing is so... Is it likelihood of success on the merits? It's not even likelihood of success. It is not. It is substantial. Even if we think you're likely to lose on the merits, we still should forgive the bond. Is that your position? Yes. Under Mohammed v. Reno, this court said that. It was recently affirmed in Citigroup Global Markets against VCG.  You're saying even if we think you are likely to lose on the merits, we should still eliminate the bond requirement under appeal? If you find that this is a substantial case, that it poses substantial questions, those are the court's language, not my language. We think we get the benefit of that relaxed standard, but we still believe we're likely to succeed. So even if you apply... Can I go back to one earlier question? Judge Carney asked you if you've offered other security, and you responded in terms of negotiations with the plaintiffs. And that's sort of speculative as to who did what in negotiations and what is likely to happen and who's to blame in the negotiations. I wonder, do you think that we have the authority if we deny the bond requirement to impose an obligation of other security? Is that something we can do or is it all or nothing? I think that's something that this court can do. Well, if that's something that this court can do, why can't you offer some security to us? This happens all the time in bail, for example, where a criminal defendant, where the government says the person needs to be detained and the defendant says, well, here's a package that I think will guarantee the safety of the community and avoid flight risk. So is there something you're offering us? Forget what you might say to them in the back room after you leave here. What do you propose that we do? Or is your actual proposal just no bond, go ahead with the appeal? No, the proposal is the following. We would maintain, as we have in our papers, a promise to do $38 million in equity in the company. We will increase... I'm sorry, you said a promise to maintain? Maintain a certain level of shareholders' equity, which is 38, we would promise $38 million. And we can come up with some scenario... What kind of assets would that be reflected? Liquid? It's not, in the court... It's all a matter of trying to get something, squeeze something out of a stone. I don't think I'd say that, Your Honor. There are liquid assets of $30 million, but those are required to continue to run the company. The company's largest asset, and this isn't a surprise considering what type of company it is, is its accounts receivables. It needs to continue to fund in order to keep taking in that revenue. And so what I would say is, let's establish a threshold for this shareholder equity. Let's make sure that we're transparent with where the assets are, the income coming in. Let's even perhaps set up a fund. I've asked my client to go back and do everything they can to figure out how much they could afford, projecting each month to put away. And we are able to put away $400,000 a month into a fund for the benefit of the plaintiffs. And we'll also agree to some sort of independent party to oversee and make sure that we continue to have this equity in the company, that we continue to provide this money into a fund, and that we continue to share with them our books and records so that they know that there's no chicanery. When we hear from your adversary. Thank you very much. Mr. Kennedy. Thank you, Your Honor. As I believe the Court is aware from its questions, the point of a Rule 62 appeal bond is to protect judgment creditors and their right to obtain their judgment. Judge McMahon issued a highly detailed, factually specific 95-page opinion determining that the plaintiffs were successful in their claims. We have not had a single offer, except for a moment ago, of any money whatsoever to secure this judgment. There's been discussion of opportunities to audit, but we don't believe that would be a particularly powerful tool on our part. The real issue here is money, and this is a well-funded company. The single shareholder at this point has taken out $7 million a year as distributions since this case began, which would be in and of itself some $21 or $28 million. And we simply think they failed to come to grips with the reality of this judgment. You don't question the assertion that they will be forced to file for bankruptcy, though, do you? I believe it is likely they would be forced to file bankruptcy. That's correct, Your Honor. And bankruptcy is not an unusual business decision to make. What we're concerned about, given the type of conduct in this case, and I don't share counsel's view of the record here, there was consistent reference to the defendants misusing corporate forms, whether it was ACS, TMG, CKK, KCC. Those are all corporate entities that they used in part to perpetrate this fraud. It is true that the court found no personal obligation on Mr. Donald O'Sullivan, the owner of Navalis. I think, frankly, it was something of a split-the-baby approach from the point of view of the district court, and in that context found that there was no intermingling of personal assets. But what she did not find, in fact, she found the reverse. There was consistent misuse of various corporate forms in order to take work that could have been performed by Navalis and have it done through its non-union hand. How likely are you of being able successfully to execute a small? If you win, you have to get a recovery. Where do you get the recovery from? Well, I think, Your Honor, we simply have to measure where we are today, whereas where we would be if there is no bond posted. And let me quote from Navalis's brief at page two to this court. Counterparties vital to this construction company are ceasing or threatening to cease working with Navalis. There is no prospect of any future work for the company because the surety has refused to issue bid and performance bonds. In that context, whatever the assets of Navalis are, and they have substantial assets of some $30 million, they will waste between now and when the court ultimately issues an award, upholding the judgment below. And it is, remember, very important to recall that the plaintiffs here are ERISA funds, they're multi-employer funds, the trustees of which have a distinct, sharp personal duty to act with an eye singled to what will maximize recovery for the funds. And this is not a case where this is simply competing businessmen. We have a public interest in ensuring that multi-employer benefit plans are funded and funded appropriately, and we cannot be funded appropriately if, that's an exaggeration, it will undercut our funding if we don't obtain this recovery. So you reject the assertion that this is shooting yourselves in the foot and that the assets will, in fact, be declining or will be less available if they are forced to file bankruptcy, rather than having this fund and this alternative method of continuing to operate for a period of time while the appeal is resolved. Well, they've never offered us a single dollar. I heard today $400,000 a month. That is total peanuts. This company did $212 million of business last year, and we're quite proud about it in the district court. Now, all of a sudden, they're paupers. What was its profitability? Pardon? What was its profitability? The— Well, you said the shareholder took out $7 million. They had contract revenues of $240 million, an increase of $102 million over the prior year. They had assets of $85 million. They had retained earnings of $36 million, stockholders' equity of $38 million, and, as I said, they made a distribution of $7 million to their shareholders. What was its profitability? The profitability, Your Honor? I would point to— The comprehensive income identified at page 5 of their financial sheet for— financial audited statement for 2016 shows $15,924,542 as their income in fiscal 2016. We simply have an argument here, which is essentially a too-big-to-fail argument, that there are 1,000 people that hold work, or maybe they said up to 2,000 people that hold work. We're not insensitive to that, but what's undenied in this record is the fact that we have a declaration from an experienced union official who points out that most of Navalis's work is public sector work, which is essentially required to be done by union contractors. Other union contractors will pick up the slack to the extent they don't do it. This is not a situation where a factory would close. There's a certain amount of union work out there that has to be done, and if Navalis doesn't do it, other union contractors will. It's a little cold-blooded, but we have to be that way because our job is to protect the benefit funds. There's inevitable downturn coming up. We all know we've been in a construction boom. We need these funds to maintain the promises we've made to people for pension, vacation, health, and other benefits. It's important... I want to note something about the standards here, because if this court didn't adopt the Nassau County or Dillon standards, you'd be an outlier. The 1st, 2nd, 3rd, 5th, 6th, 7th, 9th, 10th, and 11th have all cited the Dillon standards as appropriate. In fact, most recently, in NCUA Board v. Zavco, 2017 App Lexus 20007, 6th Circuit, October 12, 2017, only a couple of weeks ago, the court cited with approval the Dillon standards as the applicable questions to ask when someone is seeking relief from a bond. In fact, the 9th Circuit recently said, and I'm talking about October 16, 2017, the Pasquenta Band v. Crosby, 2017 U.S. District Lexus 173534, Eastern District, California. It says, quoted just a couple of weeks ago, the 9th Circuit has never formally adopted these Dillon factors and has not offered its own guidance, but Dillon is often cited within this jurisdiction and has been utilized on three occasions in the Eastern District of California. If the Southern District is going to maintain its preeminence as a commercial vehicle for the adjudication of large disputes, it would be, I think, a mistake for the 2nd Circuit to be clinging to Hilton standards that are primarily applicable to equitable issues, the maintenance of an injunction, the order to accomplish something from an equitable point of view, and not recognize the need to give judgment creditors relief. I just want to summarize what we think of the four points of significance in this case. The first is the plaintiffs are ERISA trustees who must use an I-single, as I mentioned. Second, Navolos has admitted before the court that this judgment, not the need to get a bond, but the judgment itself, has harmed its ability to obtain new work or even to access its existing credit facilities. That's footnote one to the Naughton Declaration. The third is we legitimately fear a concerted effort by the principals of these companies exposed to serial liars below, to an extraordinary extent, if you've read the court's 95-page opinion. Mr. O'Sullivan perjured himself. The head of ACS was obviously lying. They backdated critical corporate ownership documents in an effort to cloak the fraud. These are district court findings. Yes, these are all district court findings, yes. And I can give you the sites of them if you want. That's okay. Ending up with, I do not find Moriarty or Donald O'Sullivan to be particularly credible witnesses. Now, there's another point to make. There's two companies here. ACS and Navalis. Unless they're willing to simply bite down and acknowledge their alter egos, which the court certainly found below, we haven't heard a word from ACS about what its standards might be. It's editing. Be practical. The chances of you recovering on a judgment are very small. You can be putting the other company out of business. Maybe you don't care. But if you want to recover some money for your fiduciary responsibilities to your employees, you're going to have to negotiate on some kind of discount that the defendant can afford and will pay. Otherwise, you're not going to recover. You'll get another judgment if you win, but you're not going to recover. Your Honor, I understand your point, but it's a wise one. Those are the brutal facts. They're the brute facts, but I will- I mean, it has nothing to do with what we have to do here. But this is a commercial case, and you have to understand the commercial reality of the case. And if you want to understand the commercial reality and recover something for the employees, start negotiating. I understand the point of negotiating, Your Honor. That goes for Mr. Armstrong as well. A bond would assist us in doing that, is our point, Your Honor. We're not unaware of the reality. They can't get a bond. Let me point out to you what they said, Your Honor. They can't get a bond, Mr. Kennedy. Let me point out to you what Mr. Norton said in his declaration. It would cost $7 million of premium to get a bond if the bonding company wanted to bond it. They took- They're all saturated. Your Honor, they took $7 million out last year. A $7 million bond is not unaffordable for this company. They have $38 million in assets, according to themselves. And what did Mr. Norton say? Please wrap up. Yes, what Mr. Norton says is NAVLAS cannot get a supersedious bond in the amount of the judgment or anywhere near that amount. That's his words. Or anywhere near that amount. There's no statement in here that they can't afford a bond. There's a statement they can't afford the full bond. But all they're coming before you with is a settlement which they didn't first vet with us and second, we don't think is significant. Thank you very much. Thank you for your arguments. We'll reserve decision but try to get your decision as soon as possible. Thank you.